IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DWAYNE SINGLETON,

Plaintiff,

vs.                                          Civil Action No.
                                             03-CV-455 (GLS/DEP)

K. CARON, Correction Officer, *et al.*,

Defendants.

_____

APPEARANCES:                                 OF COUNSEL:

FOR PLAINTIFF

DWAYNE SINGLETON, *Pro Se*

FOR DEFENDANTS:

HON. ELIOT SPITZER                    BRUCE J. BOIVIN, ESQ.
Attorney General of the              Assistant Attorney General
State of New York
The Capitol
Albany, New York  12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

### REPORT, RECOMMENDATION AND ORDER

Plaintiff Dwayne Singleton, a New York State prison inmate, who is

proceeding *pro se* and *in forma pauperis*, has commenced this civil rights

action under 42 U.S.C. § 1983 asserting claims arising out of his

incarceration at two separate prison facilities operated by the New York State Department of Correctional Services ("DOCS").  Plaintiff's complaint, while providing a fair measure of detail regarding the facts giving rise to his claims, is less precise in describing the causes of action asserted and the legal bases for those claims.  It appears that plaintiff's complaint principally asserts claims of excessive force, in violation of his right under the Eighth and Fourteenth Amendments to be free from cruel and unusual punishment, based upon his allegation that he was beaten by corrections workers at two separate facilities.[1]  As relief for the constitutional and common law violations alleged in his complaint, plaintiff seeks recovery of compensatory damages in the amount of $800,000,000.

Currently pending before the court is a motion by those defendants who have thus far appeared in the action seeking partial summary judgment dismissing portions of plaintiff's complaint, including claims against various unserved and/or unnamed defendants.  In their motion defendants argue that aside from the excessive force claims asserted

---

[1]     Generously construed, plaintiff's complaint could also be interpreted as asserting various other constitutional and common law claims ranging from a Fourth Amendment cause of action, based upon unreasonable search of his prison cell, to causes of action for defamation.

against defendants Rushford, Daily, Peacock and McCabe arising out of an incident occurring on May 16, 2000, and against defendant Smith based upon actions taken on May 26, 2000, the claims set forth in plaintiff's complaint are subject to dismissal on a variety of bases, as a matter of law.

Based upon my review of the record, I recommend that plaintiff's claims as against defendants K. Caron, Hoissery, and Russell, as well as two defendants identified in plaintiff's complaint only as "transit officers", and who have neither been further identified by name nor served, be dismissed.  I further recommend dismissal of all of plaintiff's constitutional and common law claims except those against defendants Rushford, Daily, Peacock and McCabe arising out of the May 16, 2000 incident, and against defendant Smith as a result of an occurrence on May 26, 2000.

I.   <u>BACKGROUND</u> [2]

---

[2]     For purposes of this summary judgment motion, I interpret the facts in the light most favorable to the plaintiff, as the non-moving party.  *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).  Additionally, while it is not formally notarized, I have considered plaintiff's verified complaint, which meets the requirements of 28 U.S.C. § 1746 and Rule 56 of the Federal Rules of Civil Procedure, as having evidentiary value.  28 U.S.C. § 1746; Fed. R. Civ. P. 56(e); *Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1998) (citations omitted); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *Yearwood v. LoPiccolo*, No. 95 CIV. 2544, 1998 WL 474073, at *5-*6 (S.D.N.Y. Aug. 10, 1998); *Ketchmore v. Gamache*, No. 96 CIV. 3004, 1997 WL 250453, at *4 n. 1 (S.D.N.Y. May 12, 1997).

On May 16, 2000, while confined within the Bare Hill Correctional Facility ("Bare Hill") and performing legal work in the prison law library, plaintiff was confronted by Corrections Officers Peacock and Daily and escorted from the library to the facility's special housing unit ("SHU"), based upon an allegation that he had been observed masturbating in the presence of defendant K. Caron, a female corrections officer. Amended Complaint (undocketed) § 6, ¶¶ 2-6, 34; Boivin Decl. (Dkt. No. 28) Exh. A, at 44; *id.* Exh. B, Deposition Exh. 3.[3]  Plaintiff alleges that following his arrival at the facility's SHU, he was grabbed by defendant Peacock,

---

[3]      Having been alerted to the possibility of a discrepancy between the complaint on file with the court, Dkt. No. 1, and the version served upon the defendants, for several reasons including the fact that at least one page of the statement of facts appears to be missing from the court's copy, a member of my chambers staff contacted the defendants' counsel and requested a copy of the complaint served upon them.  Having received and reviewed that complaint, which is date-stamped May 19, 2003, with no corresponding docket entry, I determined that it varies somewhat from the originally filed complaint in that while the statement of facts is nearly if not wholly identical, it has been rewritten, and the complaint received from the defendants was proposed using a different form than that utilized for the original complaint.  It appears, however, that in copying the statement of facts for inclusion in his amended complaint, plaintiff omitted portions of paragraph 31, all of paragraph 33, and part of paragraph 34 of the original statement.  I have considered those portions of the original complaint as having been incorporated into the plaintiff's amended complaint, for purposes of this motion.

Because the amended complaint was date stamped at a time when the plaintiff would have been entitled to amend as a matter of right, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, I will direct that the clerk docket the May 19, 2003 complaint as an amended complaint, and all references within this decision will be made to that amended complaint rather than the original complaint filed by the plaintiff at the inception of the case.   Defendants' answer currently on file in this action, Dkt. No. 19, will be deemed to relate to that first amended complaint.

forcibly removed from the transport van, and taken to a draft processing room where he was attacked, while handcuffed, by defendants Rushford, Daily, Peacock, McCabe and Hoissery, who punched him in the face and stomach, kicked him in the legs, and turned him upside down.  Amended Complaint (Undocketed) § 6, ¶¶ 7-9.  During the incident racial epithets and threats were made, and plaintiff was directed to keep quiet regarding the physical assault.[4]  Amended Complaint (Undocketed) § 6, ¶ 10. Plaintiff was thereafter examined by a nurse as part of an intake physical at which time the plaintiff, heeding the corrections officer's warnings, reported that he had no injuries.[5]  Amended Complaint (Undocketed) § 6, ¶ 11.

As a result of the incident in the library, an inmate misbehavior report was issued by Corrections Officer K. Caron, accusing the plaintiff of intentionally exposing his private parts (Rule 101.20) and engaging in a sexual act (Rule 101.10).  Amended Complaint (Undocketed) § 6, ¶¶ 12-13; Boivin Decl. (Dkt. No. 28) Exhs. A, at 42-44; *id.* Exh. B, Deposition

---

[4]     Plaintiff claims that defendant Rushford stated that the officers could put him in the hospital, making it look legitimate, and threatened to kill him if he wrote any letters regarding the incident. Amended Complaint (Undocketed) § 6, ¶ 10.

[5]     According to the plaintiff, he remained in the SHU for ten days during the course of which he complained to a prison nurse regarding the assault.  Amended Complaint (Undocketed) § 6, ¶ 11.

Exh. 3.  Following a Tier III hearing, plaintiff was found guilty on both counts, receiving a penalty of six months of disciplinary SHU confinement, with a corresponding loss of package, commissary and telephone privileges, and with an additional recommended loss of four months of good time credits.[6]  Boivin Decl. (Dkt. No. 28) Exh. A, at 47-48; *id.* Exh. B, Deposition Exh. 4.

Plaintiff was transferred from Bare Hill to the Upstate Correctional Facility on May 26, 2000 by two unidentified transit officers.[7]  Amended Complaint (Undocketed) § 6, ¶ 19.  As plaintiff was being prepared for the transfer, he was taken into the Bare Hill intake area and while handcuffed, was attacked and punched in the face by the two officers.  Amended Complaint (Undocketed) § 6, ¶ 20.   At some point defendant Russell entered the room and threatened the plaintiff with a large knife, telling the

---

[6]      The DOCS conducts three types of inmate disciplinary hearings.  Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges.  Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit (SHU).  Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits.  *See Hynes v. Squillace*, 143 F.3d 653, 655 (2d Cir.), *cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (1998).

[7]      In his complaint, plaintiff notes that the names of the two unidentified officers are on the record with Investigator Wiley from the Inspector General's office in Albany, New York.  Amended Complaint (Undocketed) § 6, ¶ 19.

plaintiff "I'm going to cut your f _ _ ing balls off."  *Id.* § 6, ¶¶ 21-22.

Plaintiff was then taken to a van and transported from Bare Hill to

Upstate.  *Id.* § 6, ¶ 23.

Plaintiff alleges upon his arrival at Upstate, while shackled and

handcuffed, he was thrown by defendant Smith from the transit van into a

brick wall, and while in the intake area was punched in the face,

sustaining injuries including a swollen lip and abrasions to the left side of

his nose and above his left eyebrow but with no bone injury, concussion

or loss of consciousness.[8]  Boivin Decl. (Dkt. No. 28) Exh. A, at 106-08;

*id.* Exh. B, Deposition Exh. 12.

Both the plaintiff and members of his family wrote letters to various

officials, including the Inspector General and DOCS Commissioner Glenn

Goord, regarding the incidents of May, 2000.  Amended Complaint

_____

[8]      Defendants deny using any physical force against the plaintiff upon his
arrival at Upstate, asserting that his injuries – which they acknowledge – were the
result of his having tripped on the curb and fallen, scraping his face on the sidewalk.
Defendants' Memorandum (Dkt. No. 28) at 7 n. 18.  In support of that assertion
defendants offer an inmate injury report regarding the incident.  *See* Boivin Decl. (Dkt.
No. 28) Exh. B, Deposition Exh. 12.  Plaintiff maintains that he provided the version of
the relevant events related in that report to prison medical officials in response to
threats, including a statement by defendant Brand to the effect that if he did not report
the assault then prison officials would not take disciplinary action against the plaintiff
for drawing sexually explicit pictures.  Amended Complaint (Undocketed) § 6, ¶¶ 29-
30.  Plaintiff contends that he later shared with Corrections Lieutenant Yando, who is
not named as a defendant, the fact of the assault, only to be subsequently charged
with and convicted of making false statements.  *Id.* § 6, ¶ 31.

(Undocketed) § 6, ¶¶ 31-34.  According to the plaintiff, however, those complaints were rejected and he was advised, in essence, that he should address matters at a facility level.[9]  Amended Complaint (Undocketed) § 6, ¶ 33.

Plaintiff claims that as a result of the incidents he was placed in a mental health unit in Upstate for psychological suffering, nightmares, hallucinations, suicidal ideations and other related mental side effects. Amended Complaint (Undocketed) § 6, ¶ 34.  Plaintiff maintains that in addition, his cell was searched by G. Caron, defendant K. Caron's husband, in retaliation for having committed a sexual offense in the presence of defendant K. Caron, resulting in the issuance of a misbehavior report accusing plaintiff of being in possession of contraband. Amended Complaint (Undocketed) § 6, ¶ 34; *see also* Boivin Decl. (Dkt. No. 28) Exh. B, Deposition Exh. 17.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on April 14, 2003.  Dkt. No. 1.  As defendants, plaintiff's complaint names several DOCS employees, including Corrections Officers K. Caron, Hoissery, McCabe, and Russell,

---

[9]      Plaintiff acknowledges that he did not file a grievance regarding the matters set forth in his complaint.  Amended Complaint (Undocketed) § 4(b).

8

as well as Corrections Sergeant Rushford, all assigned to the Bare Hill

Correctional Facility; Corrections Officer Smith and Corrections Sergeant

Brand, who work at the Upstate Correctional Facility; and two transit

officers, whose names are apparently unknown to the plaintiff.  Rather

than setting forth discrete causes of action, plaintiff's amended complaint

contains what is denominated as a "synopsis of charges."  *See* Amended

Complaint (Undocketed) § 9.  While that summary is somewhat vague,

and references both substantive legal bases for certain of his claims and

the injuries suffered as a result of defendants' actions, it appears to

indicate that plaintiff is asserting causes of action for cruel and unusual

punishment, in the form of excessive force; the filing of false misbehavior

reports; the making of threats and harassment;  conspiracy; and

defamation, including libel and slander, and seeks damages which include

compensation for mental anguish and emotion distress.  *See* Amended

Complaint (Undocketed) § 9.

Following joinder of issue by the filing on August 14, 2003 of an

answer on behalf of the defendants served in the action, Dkt. No. 19,

those defendants moved on September 8, 2004 seeking the entry of

partial summary judgment limiting plaintiff's claims in the action.  Dkt. No.

28.  In their motion, defendants seek 1) dismissal of plaintiff's claims as against defendants Hoissery, Russell, K. Caron, and the two unidentified transit officers, based upon plaintiff's failure to effectuate service upon them; 2) clarification that although they are named in the body of plaintiff's complaint, Lieutenant Yando and Corrections Officer G. Caron are not defendants in the action; 3) a determination that to the extent that plaintiff's complaint can be interpreted as asserting state law claims, they are barred by N.Y. Correction Law § 24; 4) dismissal of plaintiff's claims against defendant K. Caron for the filing of a false misbehavior report, as legally deficient on the merits;  5) a finding that plaintiff's allegations of harassment, threats, and coercion do not present a cognizable constitutional claim; 6) a determination that plaintiff's assertion of a Fourth Amendment violation, based upon the search of his cell, is lacking in merit; and 7) dismissal of plaintiff's claim of conspiracy, as insufficiently pleaded.  Following an unsuccessful attempt by the plaintiff to file what appears, from defendants' papers, to have been a letter essentially stating that he is ready for trial, in opposition to defendant's motion, defendants submitted a reply in further support of their motion.[10]  Dkt. No. 29.

--------

[10]     In that letter, a copy of which has been supplied by defendants' counsel, plaintiff acknowledges receipt of defendants' motion papers and states, in response,

Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule § 72.3(c). *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Plaintiff's Failure To Properly Oppose Defendants' Motion

_____The rejection of plaintiff's letter in opposition to defendants' motion leaves that application essentially unopposed. Before turning to its merits, I must first address the legal significance of plaintiff's failure to properly oppose defendants' motion, and specifically whether that failure automatically entitles defendants to dismissal based upon their motion.

This court's rules provide that

> [w]here a properly filed motion is unopposed and the
> Court determines that the moving party has met its
> burden to demonstrate entitlement to the relief requested

_____

simply as follows:

> The plaintiff herein is ready for trial.
>
> As far as the fact that Defendabnt's [sic] Hoissery, Caron
> and the two transit officers not being properly served with
> the complaint is out of my control. I've already served the
> law suit with the US MARSHALS [sic] and they were
> supposed to serve them.

Boivin Reply Decl. (Dkt. No. 29) Exh. A.

11

> therein, the non-moving party's failure to file or serve any
> papers as required by this Rule shall be deemed as
> consent to the granting or denial of the motion, as the
> case may be, unless good cause is shown.

N.D.N.Y.L.R.7.1(b)(3).  While recognizing that *pro se* plaintiffs are entitled

to special latitude when defending against summary judgment motions

*(see Jemzura v. Public Service Comm'n*, 961 F. Supp. 406, 415 (N.D.N.Y.

1997) (McAvoy, C.J.)), courts in this district have found it appropriate to

grant a dispositive motion pursuant to Local Rule 7.1(b)(3) based upon a

*pro se* plaintiff's failure to respond.  *Robinson v. Delgado*, 96-CV-169,

1998 WL 278264, at *2 (N.D.N.Y. May 22, 1998) (Pooler, J. & Hurd, M.J.);

*Cotto v. Senkowski*, 95-CV-1733, 1997 WL 665551, at *1 (N.D.N.Y. Oct.

23, 1997) (Pooler, J. & Hurd, M.J.); *Wilmer v. Torian*, 980 F.Supp. 106,

106-07 (N.D.N.Y. 1997) (Pooler, J. & Hurd, M.J.).  As can be seen by the

face of Local Rule 7.1(b)(3), however, before summary judgment can be

granted – even in the absence of opposition – the court must review the

motion to determine whether it is facially meritorious.  *See Allen v.*

*Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 231-32

(N.D.N.Y. 2000) (Scullin, C.J.); *Leach v. Dufrain*, 103 F. Supp.2d 542,

545-46 (N.D.N.Y. 2000) (Kahn, J.).

While a plaintiff's failure to properly oppose a defendant's motion

12

does not assure that the motion, however lacking in merit, will be granted, that failure is not without consequences.  By opting not to submit proper papers in opposition to their motion, plaintiff has left the facts set forth in defendants' Local Rule 7.1(a)(3) Statement unchallenged.  Courts in this district have not hesitated to enforce Local Rule 7.1(a)(3) and its predecessor, Local Rule 7.1(f), by deeming facts set forth in a statement of material facts not in dispute to have been admitted based upon an opposing party's failure to properly respond to that statement.[11]  *See*, *e.g.*, *Elgamil v. Syracuse Univ.*, No. 99-CV-611, 2000 WL 1264122, at *1 (Aug. 22, 2000) (McCurn, S.J.) (listing cases); *see also Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 292 (2d Cir. 2000) (discussing district courts' discretion to adopt local rules like 7.1(a)(3)).  I recommend that the court follow this well-established practice and, notwithstanding plaintiff's *pro se* status, accept defendants' assertion of facts as set forth in their Local Rule 7.1(a)(3) Statement as uncontroverted, in light of plaintiff's failure to respond to that statement, when reviewing defendants' motion for facial sufficiency.

---

[11]     According to Local Rule 7.1(a)(3), "[a]ny facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."  *See* N.D.N.Y.L.R. 7.1(a)(3) (emphasis omitted).

B.    Summary Judgment Standard

_____Summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Lucente v. IBM Corp.*, 310 F.3d 243, 253 (2d Cir. 2002).  The moving party has the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the nonmoving party's claim. *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511 n. 4; *Lucente*, 310 F.3d at 253.  Once that burden is met, the opposing party must show, through affidavits or otherwise, that there is a material factual issue for trial.[12]  Fed.

---

[12]    A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Given this principle, a non-moving party cannot survive a motion for summary judgment merely by relying on the allegations contained in its pleadings.  *Corselli v. Coughlin*, 842 F.2d 23, 25 (2d Cir. 1988).  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than merely "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *Vital v. Interfaith Medical Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process); *Flores v. Graphtex*, No. 96-CV-820, 1999 WL 185260,

R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.  When deciding a summary judgment motion, the court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party.  *Lucente*, 310 F.3d at 253; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).

### C.    Lack of Jurisdiction

In their motion, defendants have urged dismissal of plaintiff's claims against defendants K. Caron, Hoissery, Russell, and the two unidentified transit officers, arguing that the court lacks personal jurisdiction over them.  This portion of defendants' motion is based upon the fact those defendants have neither been served, nor have they voluntarily appeared in the action.  Defendants also request dismissal of any claims asserted by the plaintiff against Lieutenant Yando and Corrections Officer G. Caron, who are mentioned in the body of plaintiff's complaint but have not been identified as defendants or served with process.

Defendants' request for dismissal as against these defendants is bottomed upon the requirement, imposed by Rule 4(m) of the Federal

---

at *1 (N.D.N.Y. Mar. 31, 1999) (Munson, S.J.) (*pro se* party's motions should be liberally construed).  Evidence which is not significantly probative is insufficient to withstand a summary judgment motion.  *Anderson*, 477 U.S. at 256, 106 S. Ct. at 2514.

Rules of Civil Procedure, that service be made within 120 days of

issuance of the summons, absent a court order extending that period.

That rule provides that

> [i]f service of the summons and complaint is not
> made upon a defendant within 120 days after the
> filing of the complaint, the court . . . shall dismiss
> the action without prejudice as to that defendant or
> direct that service be effected within a specified
> time; provided that if the plaintiff shows good cause
> for the failure, the court shall extend the time for
> service for an appropriate period.

Fed. R. Civ. P. 4(m).[13]  "[W]here good cause is shown, the court has no

choice but to extend the time for service, and the inquiry is ended."

*Panaras v. Liquid Carbonic Indus. Corp.*, 94 F.3d 338, 340 (7th Cir. 1996).

"If, however, good cause does not exist, the court may, in its discretion,

either dismiss the action without prejudice or direct that service be

effected within a specified time."  *Id.* (citing Fed. R. Civ. P. 4(m));

*Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986).

A plaintiff's *pro se* status entitles him or her to a certain degree of

leniency insofar as service of process is concerned; courts generally favor

resolution of a case on its merits rather than on the basis of a procedural

---

[13]     This court's local rules shorten the time for service from the 120 day
period under Rule 4(m) to sixty days.  *See* N.D.N.Y.L.R. 4.1(b).

16

technicality.  *Poulakis v. Amtrak*, 139 F.R.D. 107, 109 (N.D. Ill. 1991).

When a plaintiff proceeds *in forma pauperis*, such as is the case in this

instance, the court is obligated to issue the plaintiff's process to the

United States Marshal, who must in turn effect service upon the

defendants, thereby relieving the plaintiff of the burden to serve process

once reasonable steps have been taken to identify for the court the

defendants named in the complaint.  *Byrd v. Stone*, 94 F.3d 217, 219 (6th

Cir. 1996).  That does not mean, however, that a *pro se* plaintiff may

stand idly by upon being notified that efforts by the U.S. Marshal's Service

to serve a particular defendant have been unsuccessful.  *Vandiver v.

Martin*, 304 F.Supp.2d 934, 938-43 (E.D. Mich. 2004).

     According to the court's records, following the forwarding of the

sufficient number of copies of the summons and complaint to the

Marshal's office for service, timely acknowledgments were received from

defendants McCabe (Dkt. No. 10), Smith (Dkt. No. 11), Peacock (Dkt. No.

12), Daily (Dkt. No. 13), Brand (Dkt. No. 14), and Rushford (Dkt. No. 15).

The service acknowledgment forms sent by the Marshals to defendants

Hoissery, Russell, and K. Caron, however, were returned unexecuted, and

were filed on July 14, 2003 with a notation to that effect.  Dkt. Nos. 16, 17,

18.  Moreover, the court's file contains a letter from the acting

Superintendent of Bare Hill Correctional Facility to the Marshal's office,

advising that K. Caron is no longer employed at Bare Hill and there is no

employee by the name of Hoissery working there, and further reporting

Officer Russell appears to be employed at the Upstate Correctional

Facility.[14]  The court's records do not reveal attempts to serve the two

unidentified transit officers, nor is there indication of any efforts by the

plaintiff to ascertain their actual identities.

    As the Second Circuit has noted, courts should proceed cautiously

before dismissing on the basis of lack of service within the requisite 120

day period, particularly if the plaintiff has not been apprised of the

deficiency and afforded an adequate opportunity to cure it or to establish

good cause for extending the time for service.  *Thompson v. Maldonado*,

309 F.3d 107, 109-110 (2d Cir. 2002).  In this case, however, the

summonses in question were issued on June 13, 2003, and more than

two years have elapsed since their issuance without any effort on the part

of plaintiff to rectify the situation, or even to inquire regarding the status of

---

[14]     Unfortunately this document, which was found in the court's file between docket numbers sixteen and seventeen, was not recorded in the docket sheet, and there is no indication that plaintiff ever received a copy of the letter.

efforts to serve the remaining three named defendants.  The record is also devoid of evidence of any efforts on plaintiff's part to ascertain the names of the two unidentified transit officers alluded to in his complaint. Accordingly, I recommend dismissal of plaintiff's claims against defendants K. Caron, Hoissery, Russell and the two unidentified transit officers on this basis, without prejudice.[15]

D.    Plaintiff's False Misbehavior Report Claim

Plaintiff's complaint appears to assert claims based upon the issuance by defendant K. Caron, and potentially by Lieutenant Yando and Corrections Officer G. Caron, of false misbehavior reports.  *See* Amended Complaint (Undocketed) § 6, ¶¶ 13, 31, 24.  Defendants seek dismissal of this claim as a matter of law.

It is well established that no constitutional right is abridged by the issuance to an inmate of a false misbehavior report or charge.  *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982,

---

[15]    Because Lieutenant Yando and Corrections Officer G. Caron are not named as defendants in either the caption of the plaintiff's complaint or the portion identifying and describing the defendants, it is unnecessary to order dismissal of plaintiff's claims against those individuals.  The mere naming of a party in the body of a complaint, without more, is insufficient to place that party on notice that claims are being asserted against it by a plaintiff.  *Caldwell v. Reynolds*, Nos. 95-CV-1586, 95-CV-1803, 95-CV-1804, 95-CV-1805, 1996 WL 341986, at *1 (N.D.N.Y. June 18, 1996) (Pooler, J. & Smith, M.J.); *Flores v. Bessereau*, Nos. 98-CV-228, 98-CV-293, 98-CV-297, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J.).

108 S. Ct. 1273 (1988).  Similarly, an inmate plaintiff has no constitutional right to be free of false testimony by a corrections officer at a disciplinary hearing.  *Davis v. State of New York*, No. 99-CV-0307, 1999 WL 1390247, at *2 (W.D.N.Y. Dec. 14, 1999).  So long as an inmate receives all the process due in connection with the matter, no constitutional violation occurs when such an allegedly false misbehavior report is issued.  *Freeman*, 808 F.2d at 951.

In this instance the misbehavior report generated by Corrections Officer K. Caron resulted in a Tier III hearing.  Consequently, plaintiff received his procedural due process rights with respect to that allegedly false misbehavior report.  Similarly, there is no evidence in the record to suggest that plaintiff was not permitted to avail himself of the three tier hearing system with respect to the other two allegedly false misbehavior reports.  Accordingly, I recommend dismissal of those of plaintiff's claims which are based upon the issuance of allegedly false misbehavior reports.[16]

E.   Plaintiff's State Law Claims

---

[16]   Since the authors of the latter two misbehavior reports are not named as defendants in the action, any claims regarding those reports are legally deficient on this independent basis.

Plaintiff's complaint asserts various pendent state law causes of action, including for defamation, as well as "wrongful imprisonment". Defendants' motion also seeks dismissal of these claims.

Defendants' argument in support of dismissal of plaintiff's state law claims rest principally upon section 24 of the N.Y. Correction Law, which provides that

1.  [n]o civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of [the Department of Correctional Services], in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

2.  Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of [the Department of Correctional Services] shall be brought and maintained in the court of claims as a claim against the state.

N.Y. Correction Law § 24.  It is well established, as defendants have argued, that this section, in combination with the Eleventh Amendment, precludes the assertion of pendent state law claims against corrections workers in their individual capacities, whether in state or federal court. *See Ierardi v. Sisco*, 119 F.3d 183, 186 (2nd Cir. 1997) (citations omitted);

21

*Baker v. Coughlin*, 77 F.3d 12, 15-16 (2d Cir. 1996); *Parker v. Fogg*, No. 85-CV-177, 1994 WL 49696, at *9 (N.D.N.Y. Feb. 17, 1994) (McCurn, S.J.).  I therefore recommend dismissal of plaintiff's various state law claims on this basis.[17]

     F.     <u>Plaintiff's Claims of Harassment, Threats, and Coercion</u>

     Throughout his complaint plaintiff makes various allegations of being subjected to threats, harassment, and coercion at the hands of defendants Rushford, Brand, and Russell as well as the two unidentified transit officers.  The verbal conduct asserted by the plaintiff in his complaint ranges from the utterance of racial epithets to threats that if he complained regarding the excessive use of force against him, recrimination would occur.  Defendants seek dismissal of all claims arising from that non-physical conduct.

     In order to maintain an action for harassment, threats, or coercion under section 1983 a plaintiff must show that injury or damages have resulted;  "[v]erbal threats or harassment, unless accompanied by

_____

[17]     It appears in any event that plaintiff's defamation claims, which appear to be based upon the allegations relating to sexual misconduct, may be lacking in merit. As defendants note, during his deposition plaintiff apparently retreated from his earlier position and acknowledged the truth of the disputed misbehavior report issued by Corrections Officer K. Caron, accusing him of committing sexual acts in her presence. *See* Boivin Decl. (Dkt. No. 28) Exh. A, at 130.

physical force or the present ability to effectuate the threat, are not actionable under § 1983." *Montero v. Crusie*, 153 F.Supp. 2d 368, 376 (S.D.N.Y. 2001).   Claims against corrections workers which are premised upon the type of verbal abuse alleged in plaintiff's complaint, absent more – such as a showing of retaliatory animus and a chilling effect upon the plaintiff's exercise of protected rights, *see Garrett v. Reynolds*, No. Civ. 9:99CV2065, 2003 WL 22299359, at \*4-\*5 (N.D.N.Y. Oct. 7, 2003) (Sharpe, M.J.) – do not rise to a level of constitutional significance. *Moncrieffe v. Witbeck*, No. 97-CV-253, 2000 WL 949457, at \*3 (N.D.N.Y. June 29, 2000) (Mordue, J.).

Plaintiff's only claim with respect to defendant Rushford is that he called plaintiff a "black nigga bastard" and threatened to kill him if he wrote any letters.  Amended Complaint (Undocketed) ¶ 10.  Even accepting these allegations as true, while any use of such epithets or making of such threats would be deserving of condemnation, and undoubtedly constitutes unacceptable behavior under DOCS policies, such conduct does not support a cognizable claim under § 1983.  *Malsh v. Austin*, 901 F.Supp. 757, 763 (S.D.N.Y. 1995) (citing *Wright v. Santoro*, 714 F.Supp. 665, 667 (S.D.N.Y. 1989), *aff'd,* 891 F.2d 278 (2d Cir. 1989)

("harassment by prison guards, without physical injury, does not amount to a constitutional violation")*; Keyes v. City of Albany*, 594 F.Supp. 1147, 1155 (N.D.N.Y. 1984) (Miner, J.) ("the use of vile and abusive language, no matter how abhorrent or reprehensible, cannot form a basis for a § 1983 claim").

With respect to defendant Brand, plaintiff alleges having been told by him that if he did not report the assault by the guards, then they in turn would not report his sexually explicit artwork.  Amended Complaint (Undocketed) ¶ 29.  Even if this statement is viewed as tantamount to a threat plaintiff does not allege the required physical injury necessary to establish a constitutional claim, since defendant Brand did not come into contact with plaintiff until after the alleged assault by defendant Smith. *See generally* Amended Complaint (Undocketed) § 6, ¶¶ 25-29. Moreover, plaintiff admitted during his deposition that "Sergeant Brand didn't physically do anything to me[.]"  Boivin Decl. (Dkt. No. 28) Exh. A, at 109; Defendants' Local Rule 7.1(a)(3) Statement (Dkt. No. 28) ¶ 9.

Plaintiff also fails to allege the required physical injury to establish a constitutional claim associated with the alleged threats by defendants Russell and the two unidentified transit officers.  Amended Complaint

24

(Undocketed) § 6, ¶¶ 22, 24.  While plaintiff's complaint alleges use of a knife by defendant Russell to threaten the plaintiff, it does not aver any corresponding physical conduct or injury.

Accordingly, I recommend that each of plaintiff's claims arising from his allegations of threats, harassment, and coercion be dismissed as a matter of law.

G.    Plaintiff's Fourth Amendment Claim

Plaintiff's complaint makes reference to a search of his cell at Upstate by Corrections Officer G. Caron, apparently resulting in the issuance of a misbehavior report charging plaintiff with possession of prison contraband.  Generously construed, plaintiff's complaint could be regarded as alleging that the cell search represented a violation of his Fourth Amendment rights and/or that it was conducted by Corrections Officer G. Caron in retaliation for plaintiff's actions toward Corrections Officer K. Caron, who apparently is or may be his wife, at Bare Hill. Defendants seek dismissal of plaintiff's claims stemming from that cell search.

1.    Fourth Amendment

As defendants correctly argue, as a prison inmate plaintiff enjoys no

Fourth Amendment right to be free from searches, including of his cell; "[t]he Supreme Court has stated unequivocally that 'the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.'" *France v. Coughlin*, No. 85 Civ. 6347, 1987 WL 10724, at *2 (S.D.N.Y. May 4, 1987) (citing *Hudson v. Palmer*, 468 U.S. 517, 526, 104 S. Ct. 3194, 3200 (1984) and *Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972)).  Accordingly, to the extent plaintiff's complaint can be construed as asserting a Fourth Amendment claim, I recommend dismissal of that cause of action.

>    2.    Retaliation

Plaintiff's complaint could also be read as alleging that the search of his cell by Corrections Officer G. Caron was conducted in retaliation for his actions at Bare Hill in the presence of Corrections Officer K. Caron. Plaintiff's complaint and the record must be examined to determine whether they support a claim of retaliation based upon the search of plaintiff's cell.

In order to state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that 1) he or she engaged in protected conduct; 2) the

defendants took adverse action against the plaintiff; and 3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S. Ct. 568, 576 (1977); *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001).  If the plaintiff carries this burden, the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff "even in the absence of the protected conduct."  *Mount Healthy*, 429 U.S. at 287, 97 S.Ct. at 576.  If taken for both proper and improper reasons, then, state action may be upheld if the action would have been taken based on the proper reasons alone.  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citations omitted).

The gist of plaintiff's retaliation claim is that the search of his cell was a direct result of his having engaged in sexual activity in the presence of K. Caron.  Since such conduct, which was determined to violate prison disciplinary rules, does not fall within the ambit of constitutionally protected activity sufficient to support a retaliation claim, I recommend

27

dismissal of plaintiff's cell search retaliation claim.[18],[19] *Turner v. Johnson*, 46 F.Supp.2d 663, 665 (S.D. Tex. 1999) (citing *Graham*, 89 F.3d at 804 n.1; inmate could not establish retaliation claims when conduct was not protected but instead a violation of prison disciplinary rules).

### H.    Plaintiff's Conspiracy Claim

In his complaint, plaintiff also claims that defendants conspired against him.  Plaintiff's complaint, however, is lacking in specifics regarding either the participants in the conspiracy or its objective. Defendants seek summary judgment dismissing plaintiff's claim on the basis of its legal insufficiency.

To sustain a conspiracy claim under § 42 U.S.C. 1983, a plaintiff

---

[18]    It should be noted that the only person identified as having participated in the cell search is Corrections Officer G. Caron, who, as was previously noted, is not a named defendant in this action.  The failure to name, as a defendant, a party responsible for or participating in the claimed violation provides an independent basis for dismissal of plaintiff's Fourth Amendment and retaliation causes of action stemming from the cell search at Upstate.  *Flores*, 1998 WL 315087, at *1.

[19]    Elsewhere in his complaint, plaintiff alleges that the beating which he suffered was in retaliation for his conduct in the presence of Corrections Officer K. Caron.  *See* Amended Complaint (Undocketed) § 6, ¶ 34.  Although the beatings may give rise to an independent cause of action for the use of excessive force, in violation of the Eighth Amendment, for similar reasons it does not support a retaliation claim since plaintiff's conduct in allegedly masturbating in the presence of Corrections Officer K. Caron does not constitute protected activity.  *Turner v. Johnson*, 46 F.Supp.2d 663, 665 (S.D. Tex. 1999) (citing *Graham*, 89 F.3d at 804 n.1; inmate could not establish retaliation claims when conduct was not protected but instead a violation of prison disciplinary rules).

must demonstrate that a defendant "acted in a wilful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights . . . secured by the Constitution or the federal courts." *Malsh v. Austin*, 901 F.Supp. 757, 763 (S.D.N.Y. 1995) (citations and internal quotation marks omitted).  Conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief under section 1983.  *See Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.), *cert. denied*, 464 U.S. 857, 104 S.Ct. 177 (1983).

Neither plaintiff's complaint nor the record before the court provides the identity of the parties to the alleged conspiracy, a showing of agreement or a "meeting of the minds", or any details as to the time and place of conspiracy or its objective.  Such deficiencies are fatal to plaintiff's conspiracy claim.  *Warren v. Fischl,* 33 F. Supp.2d 171, 177 (E.D.N.Y. 1999).

Because plaintiff has asserted claims of conspiracy and only vague and conclusory terms, and has failed to come forward, in the face of defendants' summary judgment motion, with evidence to support such a conspiracy claim, I recommend its dismissal as a matter of law.  *See Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir. 1990), *cert. denied*, 499 U.S. 937,

29

111 S. Ct. 1399 (1991); *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987).

IV.   <u>SUMMARY AND RECOMMENDATION</u>

Based upon a thorough review of the record, interpreted in a light most favorable to the plaintiff, but considered also in the context of plaintiff's failure to properly oppose defendants' motion, I find that plaintiff's claims against defendants K. Caron, Hoissery, Russell, and the two unidentified transit officers are subject to dismissal, without prejudice, based upon plaintiff's failure to effect service upon them within the requisite time period.  Additionally, I find that plaintiff's complaint does not name, as defendants, either Lieutenant Yando or Corrections Officer G. Caron.

Turning to the merits of plaintiff's claims, I find that his false misbehavior report cause of action, pendent state law claims, Fourth Amendment and retaliation causes of action related to the search of his cell at Upstate, and claims of harassment, threats, and coercion, are legally deficient and subject to dismissal.  Additionally, I find that plaintiff has failed to adequately plead and support a claim of conspiracy on the part of the defendants to violate his civil rights.

As is noted by the defendants in their motion, plaintiff's Eighth

30

Amendment allegations regarding the use of excessive force at both Bare Hill and Upstate are sufficiently pleaded, and there exist genuine, triable issues of material fact which must be resolved before those claims, which are the only claims which should survive defendants' summary judgment motion, can be adjudicated.

Based upon the foregoing, it is hereby

RECOMMENDED, that defendants' motion for partial summary judgment [Dkt. No. 28] be GRANTED, and plaintiff's complaint in this action be dismissed as to all claims except those made against defendants McCabe, Daily, Peacock, Rushford, Smith and Brand for the use of excessive force; and it is further

ORDERED that the clerk docket the May 19, 2003 complaint as an amended complaint, and that defendants' answer currently on file in this action, Dkt. No. 19, be deemed to relate to this first amended complaint.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*,

31

984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of

this report and recommendation upon the parties by regular mail.

Dated:        September 8, 2005
              Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\prisoner\Singleton.wpd